# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF GEORGIA
# MACON DIVISION

JOHNNY D. CATCHINGS, :
:
    Plaintiff, :
:
v. : 5:06-CV-418 (HL)
:
HOOPER'S TRAILER SALES, INC., :
:
    Defendant. :
:
:

## ORDER

In present action Plaintiff Johnny D. Catchings ("Catchings") seeks damages from Defendant Hooper's Trailer Sales, Inc. ("Hooper's") for his termination, which he alleges was in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C.A. § 1211, et seq., Title VII of the Civil Rights Act of 1964, 42 U.S.C.A. § 2000(e), et seq., and 42 U.S.C.A. § 1981. Before the Court is Defendant's Motion for Summary Judgment (Doc. 18). For the reasons set out below, the Motion is denied in part and granted in part.

## I. BACKGROUND

Hooper's is a small manufacturer of custom trailers that employs about forty to fifty employees. Cecil Hooper owns Hooper's and is also the plant manager; Jane Hooper is the manager. Catchings is an African American who worked for Hooper's

for approximately seventeen years, primarily as a painter. In this position he was responsible for painting trailers once they were completed. Both Jane and Cecil Hooper acted as Catchings's supervisors.

**A. Disability Discrimination**

At some point during his tenure at Hooper's, Catchings began to experience dizziness and headaches. On August 15, 2005, Catchings presented a doctor's note placing him on medical leave until August 26, 2005. At the time he presented the note, he told Hooper's that he needed to take the leave because of his headaches and dizziness. Catching did not return to work until October 26, 2005, which was two months after the prescribed leave expired. Nonetheless, Hooper's was willing to allow him to return due to his long tenure with the company. Under Hooper's policy, employees on medical were required to present a doctor's note clearing them to return to work. Catchings came to work on October 26, 2005, with a note from his physician releasing him to return to work without restrictions. Catchings believed he was fully capable of performing all the functions of the job and communicated this belief to Jane Hooper.

Plaintiff also contends that he had a breathing problem. But, before Catchings took medical leave, he had not seen a doctor for this breathing problem because, according to him, he did not have time. During the leave Catchings saw a number of doctors in attempt to diagnose and treat his illness, but they were unable to diagnose a specific problem. When Catchings returned to work he believed that he

was fully capable of performing the job, which he told Jane Hooper. When he presented the note to Ms. Hooper, however, she said she was "just going to terminate" him and suggested that he go to Atlanta to get a job. Catchings Dep. 124:17-18. In addition, she said that she thought there was something wrong with Plaintiff. She had an employee type up a termination notice and revised it several times. She provided the final draft to Catchings, which stated that he was terminated due to health reasons. Ms. Hooper provided no other explanation for Catchings' termination. Catchings subsequently spoke with Cecil Hooper. Mr. Hooper told him that he could only continue to work for Hooper's Trailer if he signed something waiving liability for any injuries he suffered on the job.

### B. Racial Discrimination

The majority of Hooper's employees are Caucasian, however there are approximately ten Hispanic employees and five African American employees. While Catchings worked there, Cecil Hooper made numerous comments involving race. On a regular basis, he told his employees that he was going to replace them all with Mexican workers. In addition, on one occasion he used "the N word" when referring to another employee, Eddie Johnson. Catching Dep. 54:11-56:3. Plaintiff believed that Mr. Hooper treated his African American employees less favorable than other employees, but was unable to identify a factual basis for this opinion. After Catchings was terminated, his painting position was filled by two temporary employees–a Caucasian part-time employee was the primary fill-in for the job; an

3

African American did the work occasionally. In January 2007, Hooper's Trailer hired a Caucasian worker for the job on a full-time basis.

## II. ANALYSIS

### A. Standard

Summary judgment is appropriate when there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In ruling on a defendant's motion for summary judgment, the court takes the facts in the light most favorable to the plaintiff. Stanley v. City of Dalton, 219 F.3d 1280, 1287 (11th Cir. 2000). The initial burden lies on the movant to demonstrate that the nonmovant lacks evidence to support an essential element of its claim. Lowe v. Aldridge, 958 F.2d 1565, 1569 (11th Cir. 1992). The burden then shifts to the nonmovant, who must come forward with some evidence that would allow a jury to find in his favor, even if the parties dispute that evidence. Id. If the evidence that the nonmovant presents, however, is "merely colorable" or "not significantly probative," then summary judgment may be granted. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

### B. Disability Discrimination Claim

"To establish a prima facie case of discrimination under the ADA, a plaintiff must show: (1) he is disabled; (2) he is a qualified individual; and (3) he was subjected to unlawful discrimination because of his disability." Holly v. Clairson

Industries, L.L.C., 92 F.3d 1247, 1256 (11th Cir. 2007). The ADA therefore offers protection only to those individuals who are disabled. Standard v. A.B.E.L. Svcs., Inc., 161 F.3d 1318, 1327 (11th Cir. 1998). The ADA defines "disability" as: "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C.A. § 12102(2) (West 2005). Catchings argues that he was covered under the statute because either he actually had an impairment that substantially limited a major life activity or because Defendant regarded him as having such an impairment.

### 1. Actual Impairment

To establish a disability under the actual impairment prong, an individual must have an impairment that substantially limits one or more of his major life activities. Rossbach v. City of Miami, 371 F.3d 1354, 1357 (11th Cir. 2004). The Complaint identifies Plaintiff's disability as a breathing illness that substantially limits the major life activities of breathing and working.[1] The record of Catching's breathing illness is very limited.[2] The Court nonetheless assumes for the purposes of the Motion that he has established an impairment. As a matter of law, however, he fails to

---

[1] The Complaint also lists walking as a major life activity in which he is substantially limited. Plaintiff has provided no evidence to support this assertion and does not argue it in his Response. The Court therefore assumes he has abandoned that position.

[2] Plaintiff's Response to the Motion for Summary Judgment only cited the unverified Complaint as evidence of the breathing illness. An independent review of the record reveals that the only evidence of the breathing illness is Catchings's own testimony that he suffered from an undiagnosed "breathing problem." Catchings Dep. 22:5-23:25.

demonstrate that he is substantially limited in the major life activities of breathing or working.

An individual's ability to perform one specific job is not a "major life activity" even if it is his job of choice. Work only qualifies as a major life activity under the ADA when the plaintiff's impairment prevents him from engaging in a wide range of jobs. Carruthers v. BSA Advertising, Inc., 357 F.3d 1213, 1216 (11th Cir. 2004). In the present case, both Plaintiff and his doctor believed that he was fully capable of performing his duties as a painter at the time he was terminated. He presented no evidence of inability to perform any other job. His breathing illness therefore did not affect the major life activity of working.

On the other hand, breathing is a major life activity. 29 C.F.R. § 1630.2(i) (2007). But although Plaintiff established an impairment that affects the major life activity of breathing, he did not establish that the impairment substantially limited his ability to breath. "Substantially limited" means "*significantly restricted* as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity." Id. (citing 29 C.F.R. § 1630.2(j)(1) (emphasis added)). Vague assertions about restrictions that do not establish that the limitations are "worse than [those] suffered by many adults" are not sufficient to survive summary judgment. Id.

Catching stated simply that he suffered from a "breathing problem" when he

worked for Defendant.[3]  Catchings Dep. 22:5-23:25.  He did not describe the limitations that this problem created on his breathing.[4]  He did, however, testify that he was too busy to see the doctor about it.  In addition, on October 16, 2005, which was only ten days before he returned to work, he told his heart doctor that he was not experiencing shortness of breath.  He currently uses a nebulizer to treat the condition, but he uses it only at night.  Furthermore, it is not clear what the purpose or effect of the nebulizer is.

The Court finds that Plaintiff has not presented sufficient evidence from which a jury could find that he suffered from an illness that substantially impaired his ability to breath when he worked for Hooper's Trailer.  It was clearly not substantial enough to obtain treatment at the time, or to even mention that he was having this problem to his heart doctor.  In addition, his description of the condition is exceedingly vague.  He failed to elaborate on the symptoms or effects of his breathing problem, or to provide a formal diagnosis.  His testimony could describe a broad range of impairments, from a nagging cough, which would not substantially limit his ability to breath, to a struggle for every breath, which would be a substantial limitation.

---

[3] Catchings also testified regarding other medical problems, including headaches, dizziness, heart problems, and carpal tunnel, but he does not argue that any of these conditions make him disabled under the ADA.

[4] Catchings testified that his dizziness made him "all messed up," that he was unable to drive, his arm, hand, and leg were numb, and that he "just couldn't do nothing." Catchings Dep. 20:8-17.  He provided no testimony that any of these symptoms were caused by his breathing illness.  In fact, he identified at least some of these symptoms as the result of carpal tunnel syndrome, which he does not argue was a disability relevant to this litigation.

7

## 2. "Regarded As" Prong

An individual who "[h]as a physical or mental impairment that does not substantially limit major life activities but is treated by [an employer] as constituting such limitation" is also considered disabled under the ADA. 29 C.F.R. § 1630.2(l); see also Rossbach, 371 F.3d at 1359. Under this theory, a plaintiff is considered disabled not because he actually is disabled, but because his employer treats him as having a disability as defined by the statute. Hilburn v. Murata Elecs. N. Am., Inc., 181 F.3d 1220, 1230 (11th Cir. 1999). The employer must therefore perceive the impairment as (1) involving a major life activity; and (2) substantially limiting and significant. Rossbach, 371 F.3d at 1360. Plaintiff fails under both prongs of the inquiry.

In Carruthers, the plaintiff was diagnosed with a bilateral hand strain/sprain. 357 F.3d at 1214. She informed her employer of the diagnosis and the work restrictions her doctor had placed on her, including a prohibition on the use of computers. Id. She presented evidence that the employer placed an advertisement looking for a replacement shortly after she informed them of her inability to perform basic tasks of the job, and testified the employer told her she would be terminated if she could not maintain a full-time schedule. Id. at 1217. This evidence failed to demonstrate that the employer believed she was " 'significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes' " compared to the average person. Id. (quoting 29 F.F.R. § 1630.2(j)(3)(i)). In

8

addition, it was insufficient to prove that the employer perceived her as disabled because of her inability to perform manual tasks. She could dress and groom herself and perform all other major life activities; furthermore, there was no evidence that her employer believed otherwise. Id.

The present case presents an even weaker set of facts under the "regarded as" prong. Unlike the plaintiff in Carruthers, Catchings had no diagnosis at the time of his termination. Jane and Cecil Hooper claim to have no knowledge of the breathing illness and Plaintiff presents no evidence to the contrary. He stated himself that he did not inform Defendant of his problem and there is no suggestion in the record that he had visibly labored breathing. Although there is evidence that he told another painter of his breathing problems, this does not translate into proof that Jane or Cecil Hooper knew about Plaintiff's conversations with his coworker. Defendant could not have regarded him as having a disability if they had no awareness of the alleged impairment.

Furthermore, Plaintiff has not come forward with evidence that Defendant perceived him to be impaired in the major life activity of working. Under the ADA, he must prove that Ms. Hooper believed he was unable or significantly restricted in his ability to perform a wide range of jobs. Carruthers, 357 F.3d at 1216. At best, he showed that she believed he was incapable of performing his job at Hooper's Trailer, which is insufficient as a matter of law.

Plaintiff presented limited evidence that his employer regarded him as having

9

some nebulous, unidentified impairment. Ms. Hooper alleged stated that there was "something wrong" with defendant before she fired him. Pl.'s Resp. at 7. In addition, Ms. Hooper wrote on Plaintiff's termination notice that he was being fired for health reasons. Finally, Defendant may have known Plaintiff had applied for long-term disability, but that it had been denied. This evidence is too vague to create a material issue of fact regarding whether Defendant regarded Plaintiff as disabled. See, e.g., Christner v. Am. Eagle Airlines, Inc., 2003 WL 21267105, *6 (N.D. Ill. 2003) (holding that doctor's note stating that plaintiff was "unable to perform regular duties" was not sufficient to demonstrate employer regarded plaintiff as disabled); Lasky v. City of New York, 1999 WL 314167, *3 (E.D.N.Y. 1999) (finding that plaintiff must identify the alleged disability). Finally, even if the Court did find this evidence sufficient to show that Defendant regarded Plaintiff has having an impairment that affected his ability to engage in a major life activity, there is absolutely no evidence in the record to suggest that Defendant believed that the effect was substantial.

Plaintiff's "smoking gun" evidence in this case is a termination notice that Defendants provided him stating that he was terminated for health reasons. Although this may have been persuasive evidence of discriminatory intent, the ADA provides no protection to individuals who are not disabled under the definition of the Act. Plaintiff did not present sufficient evidence to create a disputed issue of material fact regarding his status as disabled; he therefore cannot state a claim under the ADA. Standard, 161 F.3d at 1327.

### C. Race and National Origin Discrimination Claims[5]

A plaintiff may establish a prima facie case of employment discrimination using circumstantial evidence under the framework set forth in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973), and <u>Texas Department of Community Affairs v. Burdine</u>, 450 U.S. 248 (1981).  Under the <u>McDonnell Douglas</u> framework, a plaintiff must establish a prima facie case of discrimination.  Once he has done so, the burden of production shifts to the defendant to rebut the presumption by showing that plaintiff was terminated for a legitimate, non-discriminatory reason. <u>McDonnell Douglas</u>, 411 U.S. at 802. If the defendant satisfies this burden, the presumption of discrimination drops and the plaintiff, to prevail, must then show that the proffered reason was merely a pretext for the defendant's act.  <u>Burdine</u>, 450 U.S. at 253.

A plaintiff can also survive summary judgment with direct evidence of discrimination; when a plaintiff has direct evidence, he need not rely on the <u>McDonnell Douglas</u> framework.  <u>Holifield v. Reno</u>, 115 F.3d 155, 1561 (11th Cir. 1997).  Plaintiff in this case, however, has failed to present direct evidence of discrimination based on race or national origin, and his circumstantial evidence is not sufficient under the <u>McDonnell Douglas</u> framework.

---

[5]Employment discrimination suits under Title VII and 42 U.S.C. § 1981 have the same requirements of proof and use the same analyical framework.  <u>Sledge v. Goodyear Dunlop Tires N. Am., Ltd.</u>, 275 F.3d 1014, 1015 n.1 (2001).  The analysis that follows therefore addresses both claims.

## 1. Direct Evidence

Direct evidence of discrimination is evidence that, if believed, would establish without inference or presumption that the decision maker's action was based upon discriminatory intent. Id. That is, direct evidence must directly correlate with an intent to discriminate. Wilson v. B/E Aerospace, Inc., 376 F.3d 1079, 1086 (11th Cir. 2004). If the alleged statement merely suggests, but does not prove, discriminatory intent, then the evidence is circumstantial. Id. Thus, "remarks by a non-decisionmaker[] or remarks unrelated to the decision making process itself are not direct evidence of discrimination." Standard v. A.B.E.L. Servs., Inc., 161 F.3d 1318, 1330 (11th Cir. 1998).

Here, there is no direct evidence establishing discriminatory intent. Plaintiff argues that Mr. Hooper's statements allegedly made routinely over a number of years that "it was going to be all Mexicans out there" constitutes direct evidence that Plaintiff was terminated based on his race. While Mr. Hooper attests that he never made such statements, even if he had, these statements do not directly correlate with the termination of Plaintiff. Nor do these statements prove discrimination without inference or presumption. There is an inferential leap between Mr. Hooper's statement that he wanted a workforce composed primarily of Mexicans and the conclusion that he fired Plaintiff because Plaintiff was not Mexican. Similarly, Mr. Hooper's use of "the N word" in referring to another Black employee does not constitute direct evidence that Plaintiff was terminated due to race. This comment

12

was directed at someone other than Plaintiff. Thus, these statements, however inappropriate they may be, are not direct evidence of discriminatory intent to terminate Plaintiff based on race.

Second, the statements were made in the past over a number of years and there is no indication that these statements were made around the time of Plaintiff's termination. Thus, the statements are too remote in time and too far attenuated because they were not directed at Plaintiff. Third, Mr. Hooper was not the person that terminated Plaintiff (i.e., the decisionmaker), and there is no evidence suggesting that Mr. Hooper's statements bore upon Ms. Hooper's decision to terminate Plaintiff. Evans v. McClain of Ga., Inc., 131 F.3d 957, 962 (11th Cir. 1997) (holding that stray remarks made by a non-decisionmaker is not sufficient for showing discriminatory intent). Plaintiff has therefore failed to make out a case of intentional discrimination with direct evidence.

### 2. Circumstantial Evidence

#### (i) Prima Facie Case

Under the McDonnell Douglas framework, a plaintiff must show: (1) he is a member of a protected class; (2) he was subjected to an adverse employment action; (3) he was qualified for the job; and (4) he was replaced by someone outside the protected class or was treated less favorably than a similarly situated person outside the protected class. Holifield, 115 F.3d at 1562. A prima facie case of discriminatory termination can be established by evidence of employer actions from

which a reasonable jury could infer discriminatory animus. See Schoenfeld v. Babbitt, 168 F.3d 1257, 1268 (1999). The establishment of a prima facie case creates a presumption that the employer unlawfully discriminated against the employee; thus, if the employer is silent in the face of this presumption, the court must enter judgment for the plaintiff on the basis that no issue of fact remains. Burdine, 450 U.S. at 254. Only one element of the four-part McDonnell Douglas analysis is in dispute—whether Plaintiff was replaced by someone outside the protected class, or was treated less favorably than a similarly situated person outside the protected class. Defendant does not contest that: (1) Plaintiff is a member of a protected class; (2) Plaintiff was subjected to adverse employment; nor (3) Plaintiff, having nearly eighteen years of experience working for Defendant, was qualified to do the job from which he was terminated.

For over a year after Plaintiff's termination, Defendant filled the vacant position with several temporary employees: Defendant primarily used a Caucasian employee and occasionally used an African American employee. Ultimately, a Caucasian employee was eventually hired on a permanent basis in January 2007. Defendant argues that this evidence does not satisfy the fourth prong because Plaintiff was not replaced by a Mexican individual. This logic, however, would allow any employer to discriminate against African American employees in favor of Caucasian employees simply by announcing it planned to fill its workforce with Hispanics. In addition, an employer may discriminate on the basis of race in a hierarchical manner, by

14

preferring Hispanic employees over Caucasians and Caucasians over African Americans. In other words, an employer who prefers Hispanics above all other ethnic or racial groups can still discriminate against African Americans in favor of Caucasians.

Mr. Hooper testified that he primarily used a Caucasian employee to fill Plaintiff's position, therefore occasionally employing the African American individual does not negate Plaintiff's showing of a prima facie case. Neither does Mr. Hooper's employment of part-time instead of full-time replacement employees affect the outcome of the analysis. See Mastro v. Potomac Elec. Power Co., 447 F.3d 843, 854 (D.C. Cir. 2006) ("whether a terminated Title VII plaintiff's position has been filled on a temporary or permanent basis should not affect the determination of whether the position has been filled for purposes of the prima facie case"). By demonstrating that he was replaced by someone outside his protected class, Plaintiff has created an inference that he was fired because of his race, which is all that McDonnell Douglas requires. See Teamsters v. United States, 431 U.S. 324, 358 (1977) ("The importance of McDonnell Douglas lies, not in its specification of the discrete elements of proof there required, but in its recognition of the general principle that any Title VII plaintiff must carry the initial burden of offering evidence adequate to create an inference that an employment decision was based on a discriminatory criterion illegal under the Act").

The burden therefore shifts to the Defendant to articulate a legitimate,

nondiscriminatory reason for the termination. Perryman v. Johnson Prods. Co., 698 F.2d 1138, 1142 (11th Cir. 1983). This is a burden of production, not persuasion, and it is "exceedingly light." Id. Ms. Hooper claims that her reason for terminating Plaintiff was that he did not want to work, and that she did not want an employee who did not want to be there. This reason is not discriminatory and thus it satisfies Defendant's burden. The burden therefore shifts back to Plaintiff to show that this reason is pretextual.

### (ii) Evidence of Pretext

The plaintiff may demonstrate pretext "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." Jackson v. Ala. State Tenure Comm'n, 405 F.3d 1276, 1289 (11th Cir. 2005) (quoting Burdine, 450 U.S. at 256). Bearing the burden of establishing pretext, a plaintiff must present probative evidence on the issue to avoid summary judgment. See Standard, 161 F.3d at 1332 (holding that merely disagreeing with the employer's reason for the termination based on unsupported assertions cannot constitute evidence of pretext). A court must examine "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence." Jackson, 405 F.3d at 1289.

The most probative evidence of pretext in this case comes from Ms. Hooper

herself. Although she now claims that she fired Plaintiff because of his questionable work ethic, the termination notice she provided him stated that he was fired for health reasons. She has subsequently attempted to explain away this inconsistency, but nonetheless a jury could disbelieve her post-hoc explanations. Ms. Hooper's self-contradiction is a quintessential example of an inconsistency that allows a plaintiff to proceed past the summary judgment stage and argue to a fact finder that the employer's reason for the termination was pretextual.

The court's role in ruling on a motion for summary judgment is not to weigh credibility or find facts; instead, it must construe the facts in the light most favorable to the non-movant. At trial Plaintiff will have to prove not only that Hooper's Trailer's claimed reason for terminating him was not true, but also that the real reason for the termination was intentional race discrimination. St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 511 (1993). Nonetheless, Plaintiff has come forward with evidence that Defendant's proffered reason for the termination is not credible, which satisfies the fourth prong of the McDonnell Douglas proof structure at the summary judgment stage. Jackson, 405 F.3d at 1289. Defendant's Motion for Summary Judgment on the Title VII and § 1981 claims is therefore denied.

## III. CONCLUSION

Defendant's Motion for Summary Judgment on the ADA claim is granted, and Plaintiff's claim for discrimination under the ADA is dismissed. Summary Judgment

17

is denied, however, on claims brought under Title VII and 42 U.S.C. § 1981.

**SO ORDERED**, this the 11th day of March, 2008.

*s/ Hugh Lawson*
**HUGH LAWSON, Judge**

tch